[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contested action for dissolution brought by the Plaintiff husband, against the Defendant wife, on the grounds of irretrievable breakdown.
The Plaintiff husband and Defendant wife were intermarried in Bloomfield, Connecticut on July 27, 1979, and both have been residents of the State of Connecticut for a number of years preceding this action. There has been only one child, Michael, born of the marriage in October of 1972, who is now an adult.
This case presents unusual facts in that this marriage is a second marriage for these parties. There were married previously to each other from 1971 to 1977. Further, the Plaintiff has primarily resided outside of the marital home since mid 1984.
From the credible evidence proffered at trial, the court finds the following chronology of events: Although both parties testified that when they remarried in July of 1978 both were emotionally closer to each other than they had been in the past and both were committed to the marriage, about five months into the marriage the Plaintiff indicated to the Defendant that his sexual orientation was homosexual. He further stated that he wanted to remain married and provide a home for their then six-year old son. Approximately two years later in March of 1981, they purchased the marital residence in Newington at 399 Main Street for a purchase price of $55,500. Ten thousand dollars of the purchase price was provided by the father and uncle of the defendant. The parties began immediate renovation on the home which included gutting much of the interior and eventually putting in a brand new furnace. Most of the physical work was done by the Plaintiff, Defendant and the Defendant's brother. Some friends of the family helped, on occasion, and the more difficult jobs were contracted out.
As the renovation and the marriage progressed, bickering over bills, long-term financial goals, issues of CT Page 7982 schooling and other matters concerning their son, disagreements with family members, etc. caused the parties to separate either in mid 1984 or very early 1985. For a short period of time the Plaintiff lived with Defendant's brother. Then in June of 1985 he moved into an apartment of a three-family home on Campfield Street in Hartford owned by his mother in which he resided until January of 1989. For approximately two years of that time he lived in that apartment in a homosexual relationship with a man named Ed Norton. Although the parties were separated, the Plaintiff continued to send his entire paycheck to the Defendant and lived on his expense checks which he received from his employer. He also continued to work on the renovation of the marital residence.
After that separation the couple never resumed sexual relations, but neither filed for divorce until the instant action of February 1992, both seemingly concerned about the effect on their son.
Sometime in January of 1989, after Plaintiff's mother sold the Campfield Street home in which he had been living rent free, Plaintiff moved back to the marital residence for approximately two months and lived in a spare bedroom of the home. He moved out again sometime in March or April of 1989 and lived with a friend, Gene Caron, in Hartford until about October of 1989.
At that time he moved to Cook Street in Waterbury and lived there rent free for one year with another friend. In October of 1990, he moved to Kaynor Drive in Waterbury where he still resides. For approximately one and a half years, from sometime in 1992 to December of 1993 he lived at that address in a homosexual relationship with Richard Estey. In September of 1987, the Plaintiff approached the Defendant while he was living at the Campfield Street address in Hartford with Ed Norton, about the concept of starting a retail record business with Ed Norton's brother John. As start-up money for the business, which was intended to provide educational funds for their son and retirement benefits for both parties, the Plaintiff requested that the Defendant and he arrange for a home equity loan in the amount of $50,000 on the marital residence. The parties did so on September 9, 1987 as evidenced by Plaintiff's Exhibit A. The Plaintiff retained CT Page 7983 a lawyer to incorporate the business in Connecticut and he was designated as President of the corporation with a 57% share. John Norton was designated as vice president and secretary with a 43% share. The percentage shares did not necessarily reflect the precise percentages of dollars that each party put into the start-up of the business, however. Neither the Defendant nor Mr. Norton's wife were business partners. Neither participated in the day to day business decisions. There are no documents evidencing any relationship between the Defendant and the business, Sound Waves. A portion of that initial amount, approximately $15,000, was used for the renovation of the house.
About a year later, Plaintiff and Defendant increased the initial line of credit from $50,000 to $70,000 dollars. Almost all of that amount was put into the business. Sometime in 1989, the business began having financial difficulties because of a competing chain record outlet. At this time the Plaintiff's mother obtained a loan of $50,000 secured by certain property in Wethersfield and received a promissory note from Sound Waves evidencing that transaction. She later loaned the company another $20,000 evidenced again by another note.
In May of 1989, the parties increased the line of credit once more to $95,000 for the purpose of using the $25,000 to complete renovation of the home. From September of 1987, proceeds from the business had continuously paid this second mortgage, while the Defendant had continued to pay the first mortgage. Finally, in 1990, the business failed. The inventory was liquidated and all debts were resolved either by payment, partial payment or forgiveness.
Throughout this period, the Plaintiff continued to turn over his paychecks to the Defendant until June of 1991. At that time he decided to seek legal counsel in order to make some plans for his financial future. He continued to make mortgage payments until June of 1992, after filing for dissolution in February of 1992. Although a foreclosure action was commenced on the home, the parties agreed that Plaintiff, without prejudice, would assume responsibility for the second mortgage again in order to preserve that asset until time of trial.
In November of 1993, Plaintiff filed a bankruptcy CT Page 7984 petition in order to relieve himself from payment of a number of marital debts as well as the second mortgage on the marital residence. After a Court hearing determining that the second mortgage payment was not dischargeable in the bankruptcy action, the Plaintiff again commenced payment on the second mortgage.
Although Plaintiff claims that Defendant was a "silent partner" in the business Sound Waves, Defendant stated on numerous occasions that she had no desire to make any business decisions nor to have anything to do with the business. John Norton, the Plaintiff's own partner, corroborated this testimony in that he stated that Defendant never attended any business meetings of the corporation nor did she work at the retail store. Defendant continued to maintain throughout her testimony that she would not have mortgaged the marital residence to the extent that she and her husband did if she had not believed that the family unit would remain intact. In fact, both parties testified that the last $25,000 of the total borrowed, as evidenced by Plaintiff's Exhibit C, was used totally for the renovation of the marital residence.
The Plaintiff in this action is approximately 45 years old and is a field service engineer for a company called Memorex Telex where he has been employed for approximately 15 years. He installs and services large-scale data center equipment for that company at an annual salary of approximately $42,000. Although he does claim that he is within 15% of the top of his pay scale with very little room for advancement, he is earning almost twice as much as his wife who is presently a senior bookkeeper/payroll manager for Children's Home of Cromwell, at an annual salary of approximately $25,000 (check number). Although she too is in good health, it is unlikely with her high school diploma that her salary will advance much above that level.
In arriving at the financial orders in this case, the court has considered all the criteria contained in Sections46b-61, 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes.
Accordingly, dissolution of the marriage shall enter on the grounds of irretrievable breakdown and the following CT Page 7985 order shall enter:
 1. The Plaintiff husband will Quit Claim his interest in the marital home at 399 Main Street, Newington, Connecticut to the Defendant wife. The Defendant will hold harmless the Plaintiff with respect to the first mortgage, taxes, and all expenses related to the home except the second mortgage/equity loan.
 2. The Plaintiff husband will be responsible for the home equity loan presently on the marital home at 399 Main Street, Newington, Connecticut, to the Bank of Boston, Connecticut and he shall hold the Defendant harmless from any liability associated with said home equity loan. This order is considered by this court to be in the nature of alimony, though not includable as income for the Defendant wife and not deductible for the Plaintiff husband.
 3. The Plaintiff husband shall maintain life insurance in the amount of $75,000 naming the Defendant wife as primary beneficiary for a period of seven years.
 4. The Plaintiff husband shall pay the Defendant $50 per week as alimony for a period of five years, which shall terminate on the deaths of either party or the remarriage of the wife.
 5. Plaintiff husband shall pay to the Defendant wife the sum of $3300 which represents approximately one half of the indebtedness left to the Defendant wife for joint debts of the parties which were discharged by the Plaintiff husband in his 1993 bankruptcy action, i.e. First Card, the CNG furnace debt, and the check credit line debt to Bank of Boston.
 6. Each party shall retain automobiles, bank accounts and pensions in their own names and any personal property which each presently has.
7. The Plaintiff husband shall hold the Defendant CT Page 7986 wife harmless with respect to any liability associated with Sound Waves, Inc.
 8. Plaintiff husband shall pay Attorney Robert B. Katz the sum of $1000 as listed on Plaintiff's financial affidavit and as previously ordered by this court in November of 1993, within sixty days of the entering of judgment in this matter.
 9. Each party shall be responsible for debts on his/her financial affidavit not covered by any other provision of this order.
 10. Each party shall be responsible for their respective legal expenses.
Santos, J.